1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  **KYLE ROBERT JAMES,**              Case No.: 16cv2823-WQH (NLS)

12                          Plaintiff,  **REPORT AND**
                                        **RECOMMENDATION FOR**
13        **v.**                        **ORDER:**

14                                      **(1) GRANTING DEFENDANTS'**
15  **DEPUTY EMMENS, et al.,**          **MOTION FOR SUMMARY**
                                        **JUDGMENT**
16                          Defendants.
                                        **(2) DENYING PLAINTIFF'S**
17                                      **MOTION FOR SUMMARY**
                                        **JUDGMENT**
18
19                                      [ECF Nos. 101, 116]

20

21
          Before the Court is Defendants' motion for summary judgment and Plaintiff's
22
    cross motion for summary judgment.  ECF Nos. 101, 116.  For the reasons outlined
23
    below, the Court **RECOMMENDS** that the district judge **GRANT** Defendants'
24
    motion for summary judgment and **DENY** Plaintiff's cross motion for summary
25
    judgment.
26
    //
27
    //
28

                                        1

# I. PROCEDURAL BACKGROUND

Plaintiff Kyle James ("Plaintiff"), a prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action under 42 U.S.C. § 1983 claiming that Defendants violated several of his constitutional rights while he was incarcerated at the San Diego County Jail following his sentencing. ECF No. 1. The claims stem from two events, occurring on January 23 and February 5, 2016, as follows:

- **Count 1**: Freedom from cruel and unusual punishment, due process, free speech and access to courts, based on a January 23, 2016 incident where Plaintiff refused to exit his cell for a routine hygiene inspection and resulted in him being taken for an x-ray of his anal cavity.

- **Count 2**: Freedom from cruel and unusual punishment, due process, free speech access to courts, and intentional infliction of emotional distress, based on a January 23, 2016 incident that resulted in a physical altercation with guards and Plaintiff being tasered.

- **Count 3**: Freedom from cruel and unusual punishment, due process, free speech, access to courts, intentional infliction of emotional distress, mental and emotional injury, corporal punishment and deliberate indifference based on a February 5, 2016 cell extraction.

- **Count 4**: Negligence against 9 of the 14 Defendants, including Lt. Coyne, Lt. Storton, Lt. Duckworth, Sgt. Blackwell, Sgt. Binsfield, Corp. Rodriguez, Deputy Lamonte, Capt. Flynn and Deputy Emmens.

- **Count 5**: Due process, deliberate indifference, free speech and access to courts based on actions of Sgt. Castro and Lt. Jones for intentionally attempting the thwart James' attempt to exhaust his administrative remedies, asserted only against defendants Sgt. Castro and Lt. Jones.

During the course of the case, certain claims against certain defendants were dismissed. Following Defendants' motion to dismiss, the Court dismissed Defendant Dumanis from the case, dismissed Counts 4 and 5 in their entirety, and dismissed the state law claims from Counts 2 and 3. *See* ECF Nos. 43, 57. On March 28, 2018, Plaintiff moved to voluntarily dismiss Defendant Deputy Emmens from the case, which the Court granted. *See* ECF Nos. 95, 98. Plaintiff also moved to voluntarily dismiss his excessive force claim stemming from the January 23, 2016 incident, which again the Court granted. *See* ECF Nos. 106, 110.

After the close of discovery, Defendants filed a motion for summary judgment. ECF No. 101. The Court notified Plaintiff of the requirements for opposing summary judgment pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc). ECF No. 102. Plaintiff filed a response, titled "Plaintiff's Opposition to Defendants' Motion for Summary Judgment and Plaintiff's Countermotion for Summary Judgment." ECF No. 116. Defendants filed a reply. ECF No. 119. Plaintiff then filed a reply to Defendants' reply. ECF No. 127. The Court ordered Defendants to respond, noting the Court will close briefing on the summary judgment motions upon Defendants' response. ECF No. 128. Defendants subsequently filed a response. ECF No. 129.

In Plaintiff's opposition to Defendants' summary judgment motion, he stated that he files his opposition regarding the "February 5, 2016 cell extraction" but that "all other counts he voluntarily dismisses in this opposition." ECF No. 116 at 2. Thus, all that remains in front of the Court is the federal claims asserted in Count 3 of his complaint, stemming from the February 5, 2016 cell extraction incident.

## II. FACTUAL BACKGROUND

The claims that remain in this litigation center around an incident on February 5, 2016, while Plaintiff was housed in the administrative segregation unit of the San Diego County Jail. ECF No. 101-8 at ¶ 2. At the time, Plaintiff was classified as a Level 6 Administrative Segregation Inmate, which is the Sheriff's Departments' highest classification level. *Id.* ¶ 3.

That morning, Plaintiff was ordered to be transferred to the George Bailey Detention Facility. *Id.* at 4. In light of Plaintiff's history of resisting orders and engaging in physical contact with jail staff,[1] Defendant Lieutenant Storton decided

---

[1] Various jail staff testified that Plaintiff has been known to possess jail made weapons (such as shanks, impact weapons, crushed up drugs to blind staff), to store bodily fluids to throw at staff, to make and then hide a handcuff key stored in his

(continued…)

to assemble a tactical team and to be ready to extract Plaintiff should he resist the transfer order.[2] *Id.* The plan was that Lieutenant Storton would approach the door and order Plaintiff to comply with being handcuffed so he could be escorted out of his cell to the transport vehicle. *Id.* at ¶ 5. If Plaintiff did not comply, then the tactical team would enter and extract him. *Id.* According to Lieutenant Storton, this plan was put in place to prevent Plaintiff from having an opportunity to fight back, prepare a weapon, or block the officers from entering his cell to extract him. *Id.*

The video of the incident begins at 6:35 a.m. ECF No. 101-2 at Ex. C. At around 2:15 minutes, the tactical team of at least 7 members is shown gathering immediately outside the housing area where Plaintiff was residing. At 2:18 minutes, Lieutenant Storton approaches Plaintiff's cell and informs him that he will be transferred to George Bailey that day. He tells Plaintiff that he "needs him to cooperate with us" and to "turn around, place your hands back here, and we're going to put handcuffs on you." A few seconds later, at 2:36 minutes, Plaintiff can

---

(…continued)
rectum, to make threats against staff, and to act in an assaultive nature towards staff. ECF No. 101-8 at ¶ 3; 101-5 at ¶ 5; 101-6 at ¶ 6. Plaintiff also admitted to hiding a key (ECF No. 101-2, Ex. E at E-5), blocking the window to his cell so guards could not see in (*id.* at E-12), and blocking the slot in his door with a safety blanket to avoid the pepper spray guards deployed to gain entrance to his cell (*id.* at E-14-E-15). Furthermore, even though claims surrounding the January 23, 2016 incident has been voluntarily dismissed from this case, the Court did review the videotapes from that evening. Plaintiff is shown on tape, exhibiting some of these behaviors including resisting orders to exit his cell, shouting profanities at the staff, taunting and insulting the staff, covering his window with a shirt obstructing view into his cell, stating that he has Hepatitis C and telling the staff they should get some of his blood on them, covering the slot in his door when deputies attempted to spray him to get him to comply, and physically resisting attempts to subdue him once the guards were able to enter the cell. ECF No. 101-2 at Exs. A, B (videos from January 23, 2016).
[2] Upon review of the complaint, Plaintiff only names Lieutenant Storton and Sergeant Brewer as being present for the cell extraction that morning, but Lieutenant Storton is the only individual that is a named defendant in this action. Plaintiff also alleges in his complaint that Lieutenant Duckworth called Lieutenant Storton, suggesting that the phone call motivated Lieutenant Storton to carry out the cell extraction, but Plaintiff puts forth no evidence as to this allegation.

4

be heard saying "I have to pack my stuff." Lieutenant Storton responds "No, we're going to pack it for you, turn around, face backwards to the door, we're going to come in and handcuff you." Immediately after, he says "Last warning," at 2:44 minutes in.

Lieutenant Storton is shown, backing up slightly from the door, while looking inside the cell. The video does not show what is going on inside the cell at this time. Lieutenant Storton testified that he saw Plaintiff walk over to the corner of his cell, in between the cell door and the toilet—and that this area is commonly used to hide weapons or bodily fluids to be used against jail staff. ECF No. 101-8 at ¶¶ 6-7. He also testified that he could see Plaintiff "toiling" with the waistband on his pants, indicating to him that he could be hiding a weapon. *Id.* at ¶ 8. Plaintiff disputes this version of what he was doing at the time. He states that he never refused to be cuffed, that he did not walk over to the corner of his cell between the cell door and toilet because the toilet is located next to the cell door, and that he never toiled with the waistband of his pants. ECF No. 116 at 3-4.

At 2:50 minutes in, Lieutenant Storton shakes his head at the tactical team. Lieutenant Storton testified that what he observed indicated to him that Plaintiff was not going to comply and may be arming himself. ECF No. 101-8 at ¶ 9. At 2:55 minutes in, the door to his cell is opened and five members of the tactical team in full riot gear rush in, with the lead officer using a Nova ICE electronic shield. Two members of the tactical team remained at the doorway. The video does not show their entrance into the cell or the initial contact with Plaintiff, but Lieutenant Storton testified that the deputy hit Plaintiff in the back with the ICE shield, delivering a 2-3 second burst, effectively bringing Plaintiff to the ground. ECF No. 101-8 at ¶ 10. At 3:05, officers are shown repeating "roll over or you're going to get hurt," "put your hands behind your back," and "cooperate" at Plaintiff. From 3:13 to 4:30 minutes, the video focuses on the tactical team in the cell as they

appear to attempt to handcuff Plaintiff. Plaintiff is quiet, as are the tactical team members. Plaintiff does not appear to be moving or otherwise resisting, and the tactical team is not shown to be doing anything other than holding Plaintiff down.

At 4:32 minutes in, Plaintiff is shown being led out of his cell, in handcuffs, but on his feet and walking. He is put against the wall, while the team adjusts his restraints and places waist chains on him. There is no further physical contact, though Plaintiff complains verbally about being "jumped" and physically attacked with the shield "for no reason," and accuses the guards of being mad because he "rules IA [Internal Affairs]" and being caught for excessive force. He is led out and seen by a nurse at 7:45 minutes in. An officer takes a few snapshots of his face. The nurses take his vitals and give him a physical examination. He suffered from a small contusion on the right side of his head. ECF No. 101-8 at ¶ 12. He is then led into an elevator, and out to the transport vehicle. Plaintiff is seen verbally complaining throughout this time about being attacked and how it is in retaliation for him filing complaints.

### III.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex. Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party can establish an absence of a genuine issue of material fact by (1) presenting evidence that negates an essential element of the non-moving party's case; or (2) demonstrating that the nonmoving party failed to establish an essential element of that party's case. *Celotex*, 477 U.S. at 322-323. The moving

party must identify the pleadings, depositions, affidavits or other evidence that the party "believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets its burden, the non-moving party must "go beyond the pleadings and by his own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. V. Cities Serv. Co.*, 391 US. 253, 289 (1968)). In making this determination, the court must view the underlying facts in the light most favorable to the party opposing the motion. *Id.* The court should not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

**IV. Discussion**

**a. Claims Related to the January 23, 2016 Incident**

Though Defendants' motion for summary judgment moved on the claims related to the January 23, 2016 incident, their motion was filed prior to Plaintiff voluntarily dismissing the claims related to that incident, both in his motion to dismiss and in his opposition to the motion for summary judgment. ECF Nos. 106; 110, 116 at 2. Accordingly, the Court recommends that the portion of Defendants' motion for summary judgment related to that incident be **DENIED AS MOOT.**

*//*

**b.     Excessive Force Claim Related to the February 5, 2016 Incident**

Defendants argue that they are entitled to qualified immunity with regard to Plaintiff's claim that they used excessive force in violation of the Eighth Amendment during the February 5, 2016 cell extraction.  ECF No. 101-1 at 8-13; 119 at 1-3.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).  In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth two questions to be considered in determining whether qualified immunity exists.  First, the court considers the threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201.  Second, if a constitutional right was found to be violated, the next step is to ask whether the right was clearly established.  *Id.*  The Supreme Court has clarified since *Saucier* that it is in the sound discretion of the district court to "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

**1. Did Defendants Violate the Eighth Amendment by Using Excessive Force?**

When prison officials stand accused of using excessive force, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because "prison officials generally do not have time to reflect on their

actions in the face of risk of injury to inmates or prison employees." *Gonzalez v. Felker*, No. CIV S-08-0173-MCE-CM, 2011 WL 533783, at *4 (E.D. Cal. Feb. 11, 2011) (citing *Whitley*, 475 U.S. at 320-21). In order to prevail on this claim, the prison officer must be shown to have this "culpable state of mind" when he applied the force in question. *Robins v. Lamarque*, No. C 03-0797 JSW PR, 2011 WL 6181435, at *3 (N.D. Cal. Dec. 13, 2011).

To facilitate this inquiry, the Supreme Court has identified the following factors to consider: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7. Not every malevolent touch by a prison guard gives rise to a federal cause of action and *de minimis* uses of physical force are not cognizable constitutional violations. *Id.* at 9-10. The factors here focus on whether the prison officers used force in proportion to the situation at hand. *See Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979).

Construing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff fails to present any evidence establishing that Defendants[3] had a malicious and sadistic intent to cause harm when they went forward with the cell extraction on February 5, 2016.

As a preliminary matter, "merely ordering a cell extraction does not constitute excessive force." *In re Harris*, No. C 94-0212 VRW, 1995 WL 390625, at *12 (N.D. Cal. June 19, 1995). In this case, it is not disputed that Plaintiff has a disciplinary history. Jail staff testified—and Plaintiff even admitted—to several instances where Plaintiff did not obey orders, verbally threatened staff, and actively resisted staff's attempts to extract him from his cell. The videos submitted from the

---

[3] Of the named Defendants, Lieutenant Storton appears to be the only one Plaintiff accuses of being involved in the February 5, 2016 incident.

January 23, 2016 incident corroborate this testimony.  A disciplinary history "may . . . warrant[] extra precautions in performing a cell extraction." *Skrtich v. Thorton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (noting that prisoner had a history of being uncooperative and refusing to comply to the handcuffing procedure and was put on "close management status" which was reserved for prisoners with disciplinary problems).  In light of Plaintiff's history and his resistance just two weeks prior, during the January 23, 2016 incident, it was not unreasonable for the jail staff to plan a cell extraction for Plaintiff that morning.

Turning to the actual force that was used during the cell extraction, Plaintiff's complaint centers around the electronic shield contact that was used to enter his cell and to subdue him.  Plaintiff argues that it was unnecessary because he did not refuse to "cuff up."  ECF No. 116.  Plaintiff states that in response to this order to cuff up, he stated "alright, let me pack my property," and was attacked "seconds later."

The video does corroborate most of what Plaintiff states.  However, he leaves out that in response to his comment regarding packing up his property, Lieutenant Storton directed him that they would do that for him and ordered him to "turn around, face backwards to the door, we're going to come in and handcuff you." Plaintiff also leaves out that he was given a "last warning" before the guards entered.  Plaintiff is correct that the time that passed between when he was originally ordered to cuff up and when the guards entered was only about 20-25 seconds.

The only factual dispute that exists as to what happened that morning is what actions Plaintiff took after he was ordered to cuff up and he said he was going to pack up his property.  According to Lieutenant Storton, he saw Plaintiff walk over to a part of the cell where weapons are commonly found and saw Plaintiff fussing with his waistband.  Lieutenant Storton states that this made him believe Plaintiff

was possibly reaching for a weapon. Plaintiff disputes this version of events, and the videotape does not show what happened in the cell during this time. Thus, at the summary judgment stage, the Court must view facts in the light most favorable to Plaintiff and assume that he did not take those actions that Lieutenant Storton said he was taking.

That said, Plaintiff's version of events is not that he immediately obeyed the guards' order to cuff up either. He does not claim that he immediately came to the door and placed his hands behind him to cuff up. Thus, it is not disputed that Plaintiff did not immediately comply with orders to submit to handcuffing. What is consistent with what Plaintiff states and what is shown in the video is that between the time he is told to cuff up and the guards enter, Lieutenant Storton stands at the door looking in, appearing to wait for Plaintiff to come to the door to cuff up, and eventually shaking his head to the rest of his team to indicate that Plaintiff was not doing so.

Against this factual backdrop, the Court will consider the *Horton* factors. The first factor, the need for force, and the fourth factor, the nature of the threat perceived, are closely related and will be considered together. *See Manago v. Gomez*, No. 96cv1190-MHP, 1997 WL 118329, at *3 (N.D. Cal. Mar. 7, 1997). The guards faced a prisoner that morning who was not immediately obedient to their order to cuff up and who had a history of disobedience and acting out against the guards. Indeed, just a few days prior, on January 23, 2016, Plaintiff had refused to come out of his cell and took the following actions: taunting and insulting the staff, including with profanity, covering his window with a shirt obstructing view into his cell, stating that he had Hepatitis C and essentially threatening staff to come in contact with his blood, covering the slot in his door when deputies attempt to spray him with pepper spray so that they could enter his cell, and physically resisting attempts to subdue him once they gained entrance. ECF No. 101-2 at Exs.

A, B (videos from January 23, 2016). That event resulted in Plaintiff having to be tasered before he could be controlled.

The fact that weighs most against Defendants on this factor is that they only waited seconds before concluding that Plaintiff was not going to cuff up and they would have to forcibly enter. Perhaps they could have afforded him more time to comply with their order, but prison officials are under no obligation to wait out a prisoner who is not obeying a direct order. *See Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984) (rejecting that prisoner who disobey orders can be waited out because "experience and common sense establish that a prison cannot be operated in such a way"). In light of Plaintiff's history of disobedience and prevention of guards from entering his cell, it is not unreasonable that the guards may have thought that giving him more time may increase the chances of him finding a way to make entry into his cell more difficult.

Even if in retrospect, reasonable people may disagree as to whether the officers should have given more time for Plaintiff to submit to handcuffs voluntarily, it "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary." *Whitley*, 475 U.S. at 319. Rather, the prison officials are generally accorded "'wide-ranging deference' when prescribing 'prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline.'" *Robins v. Lamarque*, No. 03-cv-797-JSW (PR), 2011 WL 6181435, at *3-5 (N.D. Cal. Dec. 13, 2011) (citing *Whitley*, 475 U.S. at 322); *see also Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Thus, even though the guards could have waited longer, the fact that they did not choose to do so in the heat of the moment is not constitutionally cognizable.

The second *Hudson* factor to consider is the injury to Plaintiff—here, that was relatively minor. Plaintiff states that he was momentarily knocked unconscious

by the force of the shield and that he sustained a contusion to the side of his head as a result. Thus, this factor does not tend to show that the prison officials acted with malicious intent. *See, e.g.*, *Manzanillo v. Moulton*, No. 13cv2174-JAS (PR), 2014 WL 4793780, at *7 (N.D. Cal. Sept. 25, 2014) (use of pepper spray that resulted in some pain in the lungs and coughing weighs against finding of malicious and sadistic intent); *Cottrell v. Wright*, No. 09cv824-JAM (CKD), 2012 WL 3535838, at *7 (E.D. Cal. Aug. 15, 2012) (finding no malicious intent where plaintiff suffered minor injuries including a cut on his elbow and bruising on his shoulder and neck following an extraction).

As to the third *Hudson* factor regarding the relationship between the need for force and the amount of force used, the Court finds that the force used was commensurate with the perceived need for the force. The shield was only deployed once for 2-3 seconds in order for the prison officials to gain entry into Plaintiff's cell. *See Birdine v. Gray,* 375 F. Supp. 2d 874, 878 (D. Neb. 2005) ("[T]he electronic shield delivers a high-voltage low-amperage shock. . . . It is safe and effective for inmates and correctional officers. The shield is typically used to gain access to, and secure control of, an inmate's room. It serves to protect the correctional officers from the blows of an inmate as the officers enter the room and the shield also provides control as a result of the electrical shock delivered to the inmate from the exterior of the shield."). While it is true that Plaintiff was not physically resistant, the shield was only used to gain control of the situation and not for the further purpose of causing Plaintiff additional harm.

Finally, as to the fifth *Hudson* factor, that Plaintiff was taken directly to the nurse for observation tempers the severity of the force used. *See, e.g.*, *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (force tempered by giving medical treatment immediately); *Manzanillo*, 2014 WL 4793780 at *8 (force tempered by having nurse immediately examine plaintiff).

The factual situation here presents a telling comparison to the factual situation in *Skrtich v. Thorton*, 280 F.3d 1295, 1301 (11th Cir. 2002). There, the prisoner also had a history of disciplinary issues and was put on a high alert status. He also refused at the outset to comply with a standard handcuffing procedure. The guards also entered the cell through the use of the electronic shield. However, the *Skrtich* plaintiff did not challenge the use of the shield as Plaintiff does here—he conceded that "some degree of force was lawful" in light of his history and his not submitting to being handcuffed. After that point, however, what happened to the *Skrtich* plaintiff took a stark and violent turn. After he was incapacitated by the shield, the *Skrtich* plaintiff was subsequently beaten and kicked by three guards. There, the court held that "once [plaintiff] was shocked with the shield, he was incapacitated" and that it was not "constitutionally permissible for officers to administer a beating as punishment for a prisoner's past misconduct."

This unconstitutional behavior is simply absent here. After Plaintiff was incapacitated by the contact with the electronic shield, the video shows no evidence that there was further force used against him. Plaintiff was not verbalizing that he was in any pain, nor were the actions of the guards on the video indicative of any further struggle—Plaintiff appears to have submitted at that point and the guards similarly focused on securing him, not harming him.

Plaintiff argues that Defendants' actions were carried out with the requisite malicious and sadistic intent because they were done in retaliation for his filing a complaint against prison officials for the January 23, 2016 incident. ECF No. 127 at Ex. 4. That complaint names Corporal Rodriguez, Deputy Emmens, Lieutenant Coyne, Sergeant Blackwell, Sergeant Binsfield and "all other members of the TAC team." *Id.* He claims that this was received by Internal Affairs on February 4, 2016—just one day before this cell extraction took place. His sole evidence to support this allegation, however, is the timing of the events. Plaintiff is correct that

timing of events can be considered circumstantial evidence to support retaliatory intent, but it is not sufficient standing alone. *Pratt v. Rowland*, 65 F.3d 802, 809 (9th Cir. 1995); *see also Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1140-41 (N.D. Cal. 2015) ("However, without more, suspect timing is insufficient to lead to a reasonable inference of retaliatory motive."); *Gray v. Terhune*, No. 99cv5358-SI, 2002 WL 31819232, at *4 (N.D. Cal. Dec. 10, 2002) ("[S]uch reasoning follows the 'logical fallacy of *post hoc, ergo proter hoc*, literally after this, therefore because of this.'") (quoting *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000)); *Seals v. Cardoza*, No. 05cv1863-SBA (PR), 2008 WL 2774298, at *3 (N.D. Cal. July 14, 2008) ("[T]he simple allegation that certain retaliatory actions occurred after the grievances were filed does not, without more, establish retaliation, rather Plaintiff must allege a nexus between the two.").

Besides the timing, Plaintiff has not presented any specific and nonconclusory allegations that Defendants had any malicious intent. Crucially, what is missing is a nexus between Lieutenant Storton and the grievance he alleges retaliation based on—he does not present any evidence that Lieutenant Storton had knowledge about the grievance he filed to Internal Affairs. *See Pratt*, 65 F.3d at 808 (finding no retaliatory intent where there was no evidence officials were actually aware of the prior event); *Gray*, 2002 WL 31819232, at *4 (no retaliatory motive where "there is absolutely no evidence that [defendant] even know about the grievances [plaintiff] had filed . . . let alone was motivated by it"). Plaintiff argues that some sort of nexus exists because a Sergeant Brewer (who is not a named Defendant in this case) was involved in the February 5 cell extraction. ECF No. 127 at 9. He states that he reported Sergeant Brewer to Internal Affairs and the Citizens Law Enforcement Review Board for a prior incident back in November 2015 where he fell down the stairs in restraints and was subsequently left strapped to a gurney in a holding cell and prevented from urinating. *Id.* at 10. In addition,

he argues that he has a long history of filing grievances (*see* ECF No. 127, Ex. 7) and Sergeant Brewer is a "common supervisor" on several of these complaints and is friends with some of the officers he filed claims against. *Id.* at 10-11. Plaintiff's attempt to create a nexus fails. First, even if Sergeant Brewer had retaliatory intent, there is no evidence that the named Defendant here, Lieutenant Storton, did or acted or was influenced by Sergeant Brewer. Furthermore, the incident involving Sergeant Brewer took place months before the cell extraction and the grievances against his alleged supervisees span a wide date range; without more, he cannot even make out retaliatory intent for Sergeant Brewer based on timing. Plaintiff's only other evidence is a self-serving declaration where he claims that Defendants acted out of retaliation (ECF No. 127) but such declarations cannot defeat summary judgment. *See Jeffers v. Gomez*, 267 F.3d 895, 907 (9th Cir. 2001) (per curiam) (plaintiff must put forth specific and nonconclusory allegations to establish that defendants acted with improper motive to survive summary judgment); *Brown v. Runnels*, No. 02c2645-ALA (PC), 2008 WL 3833552, at *8 (E.D. Cal. Aug. 13, 2008) (same). Thus, Plaintiff has not presented any real evidence to suggest that the officers that carried out the cell extraction were motivated by anything other than the legitimate penalogical interest of having Plaintiff be safely and quickly extracted for transport.

Plaintiff further argues that the officers did not follow certain policy guidelines for the use of force, and that this is further evidence of their malicious intent. He accuses Lieutenant Storton of violating the policy which states "it shall be the policy of this department whenever any Deputy Sheriff, while in the performance of his/her official law enforcement duties, deems it necessary to utilize any degree of physical force, the force used shall only be that which is necessary and objectively reasonable to effect the arrest, prevent escape, or overcome resistance." ECF No. 127 at 4; *id.* Ex. 2 at COSD-000001. He also accuses

Lieutenant Storton of violating the policy to provide a warning: "In situations where any force is used capable of causing serious injury or death, there is a requirement that, whenever feasible, the deputy must first warn the suspect that force will be used if there is not compliance." ECF No. 127 at 5; *id.* Ex. 2 at COSD-000004. However, this argument fails, because even if Plaintiff could sufficiently show that these policies were actually violated,[4] violations of policies do not rise to the level of a constitutional violation. *Sherman v. Wagner*, No. CV-10-6128-HU, 2011 WL 1337091, at *3 (D. Or. Feb. 28, 2011) ("[F]ailure to follow prison policy does not, by itself, state a section 1983 claim."); *Porro v. Barnes*, 624 F.3d 1322, 1229 (10th Cir. 2010) ("[V]iolation of a prison regulation does not give rise to an Eighth Amendment violation absent evidence the prison official's conduct failed to conform to the constitutional standard.") (internal quotation omitted).

Plaintiff also suggests that malicious and sadistic intent to harm him is evidenced because Lieutenant Storton could have chosen another option—to essentially lie to Plaintiff that he had a social visit or medical appointment so that Plaintiff would be more likely to come out of his cell more compliantly. ECF No. 127 at 8. While a creative argument, there is no constitutional violation in Lieutenant Storton for failing to think of ways to essentially "trick" Plaintiff into being more compliant. Additionally, Plaintiff states that the requisite intent is also evidenced by the camera not facing into the cell. *Id.* But Plaintiff fails to connect Lieutenant Storton with having any control over what the camera man was taping as Storton was the one talking to him at his cell door and not manning the camera. Furthermore, the Court has already discounted Lieutenant Storton's claims that Plaintiff was taking actions suggestive of having a weapon in its analysis.

---

[4] It is not at all clear he has established violations. For example, Lieutenant Storton is shown on the video saying "Last warning" to Plaintiff before the team entered the cell.

In sum, the Court finds that, even viewing the evidence most favorable to Plaintiff, no reasonable jury could find that the officers' use of the electronic shield to momentarily incapacitate him with no further objectionable contact was done with malicious and sadistic intent for the purpose of harming him. Because there is no genuine dispute of material fact as to whether the force used was excessive, this Court recommends that summary judgment be granted for Defendants and against Plaintiff on the excessive force claim.

### 2. **Was the right clearly established?**

Even if the Court finds that Plaintiff has presented sufficient evidence to raise a genuine dispute as to whether Defendants violated his Eighth Amendment rights, Plaintiff must show that it was clearly established prior to February 5, 2016, that a corrections officer could not order a cell extraction using an electronic shield for a prisoner who had a discipline history similar to Plaintiff's and who did not agree to cuff up as requested right away.

To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The level of generality at which the "right" alleged to be violated is considered must not be too high and divorced from the specific conduct at issue. *Anderson*, 483 at 639-40; *al–Kidd*, 563 U.S. at 742 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."). The dispositive inquiry is "whether the violative nature of particular conduct is clearly established" and it must be examined "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741; *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867, 198 L.

Ed. 2d 290 (2017) ("an officer might lose qualified immunity even if there is no reported case directly on point . . . [b]ut in the light of pre-existing law, the unlawfulness of the officer's conduct must be apparent.") (internal citations omitted).

Plaintiff bears the burden of demonstrating that the right at issue here was clearly established. *Kramer v. Cullinan*, 878 F.3d 1156, 1164 (9th Cir. 2018); *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011). First, Plaintiff argues that force amounts to cruel and unusual punishment if it is applied maliciously or sadistically for the very purpose of causing harm, and cites to the Supreme Court cases *Hudson* and *Whitley*. ECF No. 127 at 1-2. Plaintiff fails to analyze any of these cases any deeper than just for this "broad general proposition" and does not show their application to the "specific context of th[is] case." Based upon the Court's independent review of these cases, they are not sufficiently factually analogous that it would be apparent to Defendants that their actions were unconstitutional.[5] *See Mullenix*, 136 S. Ct. at 308. Second, Plaintiff provides a string cite under the heading "the law is established that striking a prisoner when there is no need for it is unlawful." ECF No. 127 at 3-4. But again, upon independent review of these cases, they are not sufficiently factually analogous either.[6] In sum, none of the cases that Plaintiff cites involved a constitutional

---

[5] *Hudson* involved claims that guards beat and punched the plaintiff while he was handcuffed and shackled, resulting in bruising, swelling of his face, mouth, and lip, and damage to his teeth and dental plate. *Hudson*, 503 U.S. at 4. *Whitley* involved a prisoner who was shot in the leg during a prison riot. *Whitley*, 475 U.S. at 316.

[6] In *Polizzi v. Trist*, 154 So. 2d 84, 85 (La. Ct. App. 1963), the plaintiff was "without any cause or provocation, brutally beaten about the head, face, arms, legs, abdomen and groin, causing lacerations thereon and considerable suffering." In *Mason v. Ohio Department of Rehabilitation and Corrections*, 62 Ohio Misc. 2d 96, 102, 593 N.E.2d 482, 487 (Ct. Cl. 1990), the force used against the plaintiff was minor but there was also no excessive force found. In *Lewis v. Downs*, 774 F.2d 711, 714-15 (6th Cir. 1985) , the officers continued to physically harm one plaintiff by twisting her arm and kicking her when she was handcuffed on the ground, another by striking him in head and groin with a nightstick after he was restrained, and the third by striking him in the face with a nightstick after he was handcuffed.

(continued…)

violation being found where guards used force only to subdue the prisoner, resulting only in minor injuries, and no further force being used after the prisoner was subdued.

Accordingly, the Court recommends that Defendants should be found also to be entitled to qualified immunity as to Plaintiff's Eighth Amendment excessive force claim.

### c.     Retaliation Claim

It is not clear from his complaint if Plaintiff is alleging a standalone retaliation claim or if his retaliation argument is limited to proving a malicious and sadistic intent for his excessive force claim. Out of abundance of caution, the Court will address this claim standalone as well.

To maintain a claim under § 1983 for retaliation, a plaintiff must show that (1) "the retaliated-against conduct is protected," (2) "defendant[s] took adverse action against plaintiff," (3) there is a "causal connection between the adverse action and the protected conduct," (4) the act "would chill or silence a person of ordinary firmness," and (5) the retaliatory action does not further a legitimate penological interest. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). Timing of events can be considered circumstantial evidence to support the required causal connection

_____

(…continued)
In *Bafford v. Nelson*, 241 F. Supp. 2d 1192, 1201 (D. Kan. 2002), the court found no constitutional violation for force used to restrain the plaintiff but denied summary judgment for several punches to the back of his head after he was restrained. In *Jones v. Huff*, 789 F. Supp. 526, 535-36 (N.D.N.Y. 1992), the plaintiff was kicked and punched while he was pinned face down by officers. In *Caudle-El v. Peters*, 727 F. Supp. 1175, 1180 (N.D. Ill. 1989), the plaintiff was choked, thrown on the floor, and a guard dropped his knee on him after he was handcuffed and secured. *Moore v. Richmond Police Department*, 497 F. App'x 702, 708 (9th Cir. 2012), did not rule on the actual excessive force claim, but on an issue with a jury instruction regarding excessive force and the facts involved an arrestee that alleged he had been punched, hit, and sodomized by police officers after he was in handcuffs. Finally, *Headwaters Forest Def. v. Cty. of Humboldt*, 240 F.3d 1185, 1199 (9th Cir. 2000), involved arrestees who were sprayed with pepper spray during a protest.

between the adverse action and the protected conduct but it is not sufficient standing alone. *Pratt*, 65 F.3d at 809; *Quiroz*, 85 F. Supp. 3d at 1124 ("[M]ere speculation that defendants acted out of retaliation is not sufficient.").

Thus, for the same reasons as explained above, Plaintiff has not sufficiently put forth any evidence establishing a causal connection between his filing of the grievance and the cell extraction. He relies on timing but fails to show knowledge on the part of Lieutenant Storton of the filing of the grievance. All his other evidence is pure speculation in the form of a self-serving declaration. Furthermore, in light of the Plaintiff's discipline history and his failing to immediately comply with the guard's order to submit to handcuffing, Plaintiff has also failed to put forth evidence to establish that the cell extraction served no legitimate penological purpose. Accordingly, the Court recommends that summary judgment be granted for Defendants and against Plaintiff on the retaliation claim as it relates to the February 5, 2016 incident.

### d.    Access to Courts Claim

It is similarly unclear from Plaintiff's filings whether he is maintaining his original access to courts claim but the Court will also address this claim.[7] Prisoners have a constitutional right to access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). This right is limited to direct criminal appeals, habeas petitions, and civil rights actions. *Id.* at 354. In order to sustain such a claim, Plaintiff must prove an "actual injury" as a threshold requirement. *Id.* at 351-53. For example, an "actual injury" could be shown by "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348. Plaintiff's complaint and summary judgment filings do not explain what litigation (potential or existing) that Defendants conduct interfered

---

[7] Plaintiff's filings on the summary judgment motions (ECF Nos. 116, 127) does not discuss his access to courts claim explicitly.

with or how they interfered.  Accordingly, the Court recommends that summary judgment be granted for Defendants and against Plaintiff on the access to courts claims as it relates to the February 5, 2016 incident.

### V.  Conclusion

For the foregoing reasons, the Court finds that Defendants did not violate Plaintiff's Eight Amendment right to be free from excessive force and that, even if they did, the right Plaintiff alleges was not clearly established.  The Court also finds that Defendants did not violate Plaintiff's rights by retaliating against him or preventing him from access to the courts.  The Court, therefore, **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** and Plaintiff's cross motion for summary judgment be **DENIED**.  This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than <u>**September 14, 2018**</u>, any party to this action may file written objections and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections must be filed and served on all parties no later than <u>**September 28, 2018**</u>. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS ORDERED.**

Dated:  August 22, 2018

Hon. Nita L. Stormes
United States Magistrate Judge